UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN R. WOOD, GINGER K. WOOD,
and GINGER K. WOOD as Next Friend
for ROBERT A. WOOD, JOSEPH K. WOOD,
and ELLEN H. WOOD, Minors,

    Plaintiffs,

v.

Case No. 1:04-CV-346
Hon. Hugh W. Brenneman, Jr.

RYAN A. PALMER, CONNIE E. NIEHOFF,
RHONDA K. LAWSON, and
PROGRESSIVE SPECIALTY INSURANCE
COMPANY, an Ohio corporation,

    Defendants.
_____/

**OPINION**

Plaintiffs' suit arises out of a multi-vehicle automobile accident that occurred on December 1, 2002. Plaintiffs allege in their First Amended Complaint that defendant Connie Niehoff was driving a sport utility vehicle ("SUV") in an east-bound lane of Interstate 94 near Battle Creek, Michigan, and that defendant Ryan Palmer was the driver of a Lexus automobile following the Niehoff SUV. Plaintiff John Wood was driving a van in a westbound lane of Interstate 94, in which plaintiffs Ginger Wood, Robert Wood, Joseph Wood and Ellen Wood were passengers. Defendant Niehoff allegedly lost control of the SUV which flipped on its side. Defendant Palmer then allegedly lost control of his vehicle, crossed the highway median and collided with plaintiffs' van.

Two other defendants named in this action had no role in the accident itself. Defendant Rhonda Lawson was an owner of an automobile driven by her son, defendant Ryan Palmer, and defendant Progressive Specialty Insurance Company was plaintiffs' insurer.

Plaintiffs allege that they each suffered serious injuries in the accident. Plaintiff Ginger Wood was pregnant at the time and alleges that the collision "also killed the 5-month-old unborn baby daughter she was carrying," which plaintiffs refer to as "Baby April Lynn."[1] Although plaintiffs refer to Baby April Lynn throughout their complaint, the unborn child is not a party in this suit.[2]

The matter is now before the court on defendants Palmer and Lawson's motion for summary judgment as to plaintiffs Robert Wood (docket no. 91), Joseph Wood (docket no. 93), and Ellen Wood (docket no. 95), and on their' "Motion to partially dismiss" various claims (docket no. 97). Defendants Niehoff and Progressive Specialty Insurance Company have filed concurrences in each of these motions. *See* docket nos. 104, 105, 106, 107, 111, 112, 113, 115 and 116.

Plaintiffs have filed two responses. First, plaintiffs filed a document entitled "Plaintiffs' Opposition to defense summary judgment motions as to Robert, Joseph, and Ellen Wood, and Counter-Motion for summary judgment on the injury threshold issue" (docket no. 117).[3] Second, plaintiffs filed a document entitled "Plaintiffs' Opposition to defense 'Motion to partially dismiss'" damage recovery for prenatal tort statute (i.e., MCL 600.2922a) claims" (docket no. 118).[4]

---

[1] For purposes of this opinion, the court will refer to the fetus as "Baby April Lynn," the term chosen by plaintiffs.

[2] Plaintiffs have not attempted to open an estate for or file a wrongful death action on behalf of the unborn child, nor is April Lynn listed as a party plaintiff. See Section III, *infra.*

[3] Plaintiffs' counter-motion for summary judgment has not been separately docketed.

[4] The court will refer to plaintiffs' "oppositions" as docket no. 117 and docket no. 118, respectively.

### I.    Motions for summary judgment

### A.    Standard of Review

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a Rule 56 motion as follows:

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 2552-53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); *LaPointe*, 8 F.3d at 378. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 252.

*Id.* at 478-79. "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The court's subject matter jurisdiction of this case is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and involves the application of Michigan law. Absent a federal question, the law to be applied is the law of the state as declared in a statute or by its highest court. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Sommer v. Davis*, 317 F.3d 686, 694 (6th Cir. 2003). "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir.1989).

### A.  Michigan's No-Fault Act

Defendants' summary judgment motions contest plaintiffs' claims brought pursuant to MCL § 500.3135 (sometimes referred to as the "no-fault act"). The purpose of Michigan's no-fault act is to bar recovery for non-economic loss unless an injury is serious, and to relieve the courts of the burden of litigation where a party's injury is not serious. *See Byer v. Smith*, 419 Mich. 541, 545-46 (1984). Defendants contend that Robert Wood, John Wood and Ellen Wood's injuries are not sufficiently serious to meet the injury threshold of the no-fault act. The act provides in pertinent part:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.
>
> (2) For a cause of action for damages pursuant to subsection (1) filed on or after 120 days after the effective date of this subsection, all of the following apply:
>
>> (a) The issues of whether an injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>>
>>> (i) There is no factual dispute concerning the nature and extent of the person's injuries.
>>>
>>> (ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement. However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury. . . .
>
> (7) As used in this section, "serious impairment of body function" means an

> objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life.

MCL § 500.3135.

### B.     Robert Wood, John Wood and Ellen Wood did not "suffer death"

Plaintiffs contend that they have met the threshold requirement of MCL § 500.3135(1) because they "suffered death," i.e., the death of their unborn sister (Baby April Lynn), with resulting emotional and psychological injuries. Plaintiffs submit no authority to support their contention that being in the vicinity of an injured person that dies as the result of an automobile accident meets the threshold requirement of MCL § 500.3135(1) because they "suffered death." The Michigan Court of Appeals has construed the phrase "suffered death" as meaning that the injured person died. *See Jackson v. Nelson*, 252 Mich.App. 643, 653; 654 N.W.2d 604 (2002) (observing that the no-fault act limits "noneconomic damages to severe conditions, including 'death, serious impairment of body function, or permanent serious disfigurement'"). None of these plaintiffs died in the accident. Accordingly, none of these plaintiffs can be said to have "suffered death" within the meaning of MCL § 500.3135(1).

### C.     Robert Wood, John Wood and Ellen Wood did not suffer a serious impairment of a body function.

In *Kreiner v. Fischer*, 471 Mich. 109, 683 N.W.2d 611 (2004), the Michigan Supreme Court set forth a multi-step process to provide courts with a basic framework for separating those plaintiffs who meet the statutory serious impairment of body function threshold from those who do not:

> First, a court must determine that there is no factual dispute concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment

of body function. If a court so concludes, it may continue to the next step. But, if a court determines there are factual disputes concerning the nature and extent of a plaintiff's injuries that are material to determining whether the plaintiff has suffered a serious impairment of body function, the court may not decide the issue as a matter of law. M.C.L. § 500.3135(2)(a)(i) and (ii).

Second, if a court can decide the issue as a matter of law, it must next determine if an "important body function" of the plaintiff has been impaired. It is insufficient if the impairment is of an unimportant body function. Correspondingly, it is also insufficient if an important body function has been injured but not impaired. If a court finds that an important body function has in fact been impaired, it must then determine if the impairment is objectively manifested. Subjective complaints that are not medically documented are insufficient.

If a court finds that an important body function has been impaired, and that the impairment is objectively manifested, it then must determine if the impairment affects the plaintiff's general ability to lead his or her normal life. In determining whether the course of the plaintiff's normal life has been affected, a court should engage in a multifaceted inquiry, comparing the plaintiff's life before and after the accident as well as the significance of any affected aspects on the course of the plaintiff's overall life. Once this is identified, the court must engage in an objective analysis regarding whether any difference between the plaintiff's pre- and post-accident lifestyle has actually affected the plaintiff's "general ability" to conduct the course of his life. Merely "*any* effect" on the plaintiff's life is insufficient because a de minimis effect would not, as objectively viewed, affect the plaintiff's "general ability" to lead his life.

*Kreiner*, 471 Mich. at 131-33.

The court then provided a non-exhaustive list of objective factors that may be used in determining whether a plaintiff's "general ability" to conduct the course of his normal life has been affected. These factors include "(a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery." *Id.* at 133. Finally, in evaluating the extent of any residual impairment, the court stated that "[s]elf-imposed restrictions, as opposed to physician-imposed restrictions, based on real or perceived pain do not establish this point." *Id.* at

n. 17.

At the time of the accident, plaintiff Robert Wood was ten years old, plaintiff Joseph Wood was eight years old and plaintiff Ellen Wood was almost three years old. In their response to the summary judgment motions, the minor plaintiffs admit that although they "suffered physical injuries in the automobile accident, they do not now and never have asserted that these physical injuries (most of which have now healed) meet the injury threshold." Docket no. 117 at 21 (emphasis in original).[5] However, plaintiffs claim that they meet the injury threshold due to mental, psychological and emotional injuries.

Michigan courts have recognized that individuals may suffer mental injuries as the result of automobile accidents and have treated such injuries as a type of "serious impairment of body function." *See, e.g., Luce v. Gerow*, 89 Mich. App. 546, 547; 280 N.W.2d 592 (1979) (plaintiff claimed that she suffered an emotional shock which has resulted in physical symptoms from seeing her husband suffer serious head injuries at the time of the crash and as a reaction to his continuing poor condition). In *Luce*, the court held that mental or emotional injury which impairs a body function is compensable under the no-fault act. *Id.* at 549-50. Although the *Luce* decision set forth the general rule that mental injuries are compensable, the court must view the decision in light of the subsequent 1995 amendment to MCL § 500.3135. This amendment "added the definition of serious impairment of body function, including the language requiring an objectively manifested impairment." *Rammeloo v. Williams*, No. 242602, 2003 WL 22801814 at *12 (Mich. App. Nov. 25, 2003).

---

[5] The First Amended Complaint alleges that each minor plaintiff suffered numerous physical injuries in the accident. Nevertheless, the court will accept plaintiffs' statement at face value.

Plaintiffs contend that they suffered from "bystander injuries." Docket no. 117 at 15. Although the Michigan Court of Appeals recognized a claim for bystander recovery in *Luce,* the Michigan Supreme Court in a more recent decision stated that "[t]his Court has never recognized the existence of such a cause of action" but declined to discuss the validity of bystander recovery claims. *Hesse v. Ashland Oil, Inc.*, 466 Mich. 21, 24 n. 6; 642 N.W.2d 330 (2002). While the Michigan Supreme Court has not recognized bystander injuries, neither has it rejected such claims. For purposes of this opinion, the court will follow the *Luce* decision on the issue of bystander recovery, because it is not persuaded that the Michigan Supreme Court would decide otherwise. *See Puckett*, 889 F.2d at 1485.

Plaintiffs admit that "the Wood parents have never taken the young children to a psychiatrist or psychologist for clinical diagnosis, psychiatric drugs or formal counseling." Docket no. 117 at 20. Plaintiffs contend, however, that "[n]o legal authority in Michigan imposes such a requirement to demonstrate the injury threshold for mental and emotional injuries." *Id.* The court cannot agree. Under the no-fault act, plaintiffs' mental injuries must result in "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL § 500.3135(7). The term "objectively manifested" as set forth in the no-fault act requires proof that the injury is "medically identifiable." *Jackson*, 252 Mich. App. at 652-53. "Subjective complaints that are not medically documented are insufficient." *Kreiner*, 471 Mich. at 132.

Ginger Wood testified that Robert has nightmares, fears traveling in vehicles, is mentally and emotionally not the same person since the accident and has "struggled a little" at school. Ginger Wood Dep. at 38, 39, 55, 57. She also testified that Joseph is socially withdrawn,

has nightmares, fears traveling in vehicles and has other "emotional issues." *Id.* at 44-45, 54-56. Joseph's parents attribute his "flunking" of second grade as a consequence of the accident. Docket no. 117 at 15; Ginger Wood Dep. at 43-44, 57-58. In addition, Joseph testified that he was not concentrating very well because he was worried. Joseph Wood Dep. at 13. Finally, Ginger Wood and Ellen testified that Ellen has nightmares, talks to her dolls about buckling their seatbelts and that the family often visits Baby April Lynn's grave site. Ginger Wood Dep. at 54-55; Ellen Wood Dep. at 5-6. These subjective complaints are not medically documented.

Plaintiffs have presented some medical records relating to the minor children following the accident. Plaintiffs cite a hospital record in which a doctor states that he saw Ellen screaming when he entered the room, apparently because she had a bad experience while being in the hospital the weekend after the accident. *See* docket no. 124 at Exh. 9. Plaintiffs also cite medical records indicating that Robert was tearful and anxious while in the hospital after the accident. *See* docket no. 123 at Exh. 5. This evidence falls far short of the "objectively manifested impairment" threshold requirement.

Considering the record as a while, the court is constrained to conclude that none of the minor plaintiffs have suffered serious impairment of body function within the meaning of the statute.

### D.     Robert Wood's permanent serious disfigurement[6]

Defendants acknowledge that Robert suffered a facial fracture in the accident and that there is no material factual dispute about the nature and extent of his injuries or that any such factual dispute is not material to this determination. Defendants' Brief at 4-5. The issue before the court is

---

[6] Plaintiffs Joseph and Ellen Wood do not claim that they suffered permanent serious disfigurement.

9

whether Robert Wood's injuries constitute a permanent serious disfigurement. MCL § 500.3135

The medical records indicate that Robert Wood suffered the following injuries in the accident:

1. Complex facial trauma including left LeFort 1 maxillary fracture.

2. Left complex orbital rim and orbital floor fracture.

3. Nasal fracture.

Docket no. 123, Exh. 4. Plaintiffs have submitted photographs indicating that Robert suffered scarring under his left eye. Docket no. 117 at 14, 23-24.

Whether an injury amounts to a permanent serious disfigurement depends on its physical characteristics rather than its effect on the plaintiff's ability to live a normal life. *Mausolf v. Bumgardner*, No. 260029, 2005 WL 1189680 at *1 (Mich. App. May 19, 2005); *Kosack v. Moore*, 144 Mich.App. 485, 491; 375 N.W.2d 742 (1985). The seriousness of a scar should be determined by resorting to common knowledge and experience. *Nelson v. Meyers*, 146 Mich. App. 444, 446 n. 2; 381 N.W.2d 407 (1985). For example, a "hardly discernable scar" is not the type of injury for which the Michigan Legislature intended to allow recovery when it established the threshold requirement of permanent serious disfigurement. *See Petaja v. Guck*, 178 Mich. App. 577, 580; 444 N.W.2d 209 (1989).

The court has reviewed color photographs of Robert Wood. *See* docket no. 117 at 14, 23 and 24. It is the court's opinion that Robert's injury is more than a "hardly discernable scar." The location of the injury leaves him with a lack of symmetry in his face, with the left eye looking larger than the right eye. Plaintiff refers to this as an "outward turned lid" with "a red-eyed Basset Hound look." *Id.* at 24. This disfigurement may well affect the way in which the child faces the

world. An onlooker's attention is immediately drawn to Robert's left eye. While the scar is small, and might have been "hardly discernable" if it was on his arm or leg, the scarring under his left eye is noticeable. It is clear to anyone looking at Robert that he suffered some type of disfiguring injury to his left eye. The court's observation is supported by Robert deposition testimony. Robert testified that the scar bothers him, that he is not as attractive as he used to be, that one eye is "skinnier" than the other when he squints and that "[a] lot of people" look at him and ask him "[w]hat happened to your eye?" Robert Wood Dep. at 9-10. Every one of Robert's teachers and "random people" at his school have asked him about his eye. *Id.* at 10. Robert further testified that "not as many people like me anymore" due to the scar and that people spread rumors about it. *Id.* at 16.

The court finds that Robert Wood has suffered a permanent serious disfigurement within the meaning of the no-fault act. Accordingly, defendants' motion for summary judgment will be denied with respect to Robert. Plaintiff Robert Wood has brought a counter-motion for summary judgment on this issue (docket no. 117) which will be granted. *See* MCL § 500.3135(2)(a)(i).

### III. Motion to Dismiss

Defendants have filed a motion to dismiss certain claims pursuant to Fed. Rules Civ. Proc. 12(b)(6). Defendants' motion seeks to dismiss certain "vague and general allegations with regard to emotional, mental and psychological injuries resulting from the accident." Defendants' Brief at 2. Regarding what might be considered claims by or on behalf of the fetus, defendants seek to dismiss "[a]ll claims seeking to recover on behalf of the fetus for physical, emotional or mental injuries to the fetus" and "[a]ll claims seeking damages for loss of consortium of the fetus." *Id.* at 4.

Under Rule 12(b)(6), a complaint may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

11

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Because the parties have submitted extensive documentation in addition to the pleadings, the court will view the motion as one for partial summary judgment pursuant to Rule 56(b).

Defendants' motion requires the court to initially identify the various claims brought by the plaintiffs. These appear to be as follows:

> Plaintiffs John Wood and Ginger Wood seek damages for the "the loss and death of [their] 5-month-old unborn baby daughter, and her society, companionship, love, affection, and comfort (e.g., MCL [§] 600.2922a; Michigan Non-Standard JI 23:05)"[7] and "[f]uneral and burial expenses for [their] baby daughter." First Amended Compl. at 7-8.

> Siblings Robert, Joseph and Ellen Wood seek damages including "the loss and death of [their] 5-month-old unborn baby sister, and her society, companionship, love, affection, and comfort (e.g., MCL [§] 600.2922a; Michigan Non-Standard JI 23:05)." *Id.* at 8-9.  Baby April Lynn is not a plaintiff to this suit.

The First Amended Complaint also indicates that "Baby April Lynn" is seeking damages for "[s]evere and fatal injuries, and a premature and unnecessary death (e.g., MCL [§]

---

[7] Michigan non-standard civil jury instruction JI23.05, entitled "Wrongful act against pregnant individual," is based upon MCL § 600.2922a and provides as follows:

> In this case, the plaintiff claims that the defendant's actions resulted in [the plaintiff suffered a miscarriage or a stillbirth/injury to the embryo or fetus that the plaintiff was carrying].

On this claim, plaintiff has the burden to prove that:

(1) The plaintiff was pregnant;

(2) The defendant committed a wrongful or negligent act against the plaintiff; and

(3) As a result of that act by the defendant, [the plaintiff suffering a miscarriage or a stillbirth/the embryo or fetus that the plaintiff was carrying was injured].

*See* Michigan Non-Standard Jury Instructions Civil § 23:05 (West Group 2004).

600.2922a; Michigan Non-Standard JI 23:05)," "[p]ain, suffering, and mental anguish" "[l]oss of life, pleasure, and enjoyment of life and family," and "[o]ther damages, injuries, and consequences." *Id.* at 9. At the hearing on the motion, plaintiffs' counsel clarified that plaintiffs were seeking a loss of consortium claim on the part of the family and not raising a claim on behalf of Baby April Lynn. Counsel's representation is consistent with the record. The First Amended Complaint does not name Baby April Lynn in the caption or specifically list her as a party as it does the other family members. The complaint also does not include a wrongful death claim with respect to Baby April Lynn. Such a claim requires the appointment of a personal representative for the decedent's estate. *See* MCL § 600.2922(2) ("[e]very action under this section shall be brought by, and in the name of, the personal representative of the deceased person"). Accordingly, the court determines that Baby April Lynn is not a plaintiff in this action and will disregard any purported requests for damages listed in the First Amended Complaint on behalf of Baby April Lynn.

It remains for the court to decide whether the family members can maintain loss of consortium claims for the death of Baby April Lynn under the common law and/or MCL § 600.2922a.[8]

### A.     Loss of consortium under the common law

Michigan's no-fault act did not abolish common law actions for loss of consortium. *Rusinek v. Schultz, Snyder & Steele Lumber Co.*, 411 Mich. 502, 508; 309 N.W.2d 163 (1981); *Bak v. Citizens Ins. Co. of America*, 199 Mich.App. 730, 738; 503 N.W.2d 94 (1993). A husband or wife may recover damages for loss of consortium when his or her spouse is injured by the negligence

---

[8] It does not appear that plaintiffs' rights to seek funeral and burial expenses for the fetus is contested.

of a third party. *See Oldani v. Lieberman*, 144 Mich.App. 642, 645; 375 N.W.2d 778 (1985) ("[l]oss of consortium includes conjugal fellowship, companionship, services and all other incidents of the marriage relationship").

A claim for loss of consortium is a derivative claim, not a claim brought directly under the no-fault act. *See, e.g., Van Guilder v. Collier*, 248 Mich. App. 633, n. 1; 650 N.W.2d 340 (2002). Thus, "[a] claim of loss of consortium is contingent upon the injured person's recovery of damages." *Auto Club Ins. Ass'n v. Hardiman*, 228 Mich.App. 470, 474-75; 579 N.W.2d 115 (1998), *citing Bias v. Ausbury*, 369 Mich. 378, 382, 120 N.W.2d 233 (1963). Since neither Baby April Lynn nor her estate are parties to this suit, plaintiffs cannot prevail on a derivative claim for loss of consortium in the absence of a recovery by the injured person. The common law loss of consortium claim is deniable on this basis alone.

Moreover, however, neither a child's parents nor a child's siblings can bring a cause of action for loss of consortium based on the loss of a child in the first place. In *Sizemore v. Smock*, 430 Mich. 283, 285; 422 N.W.2d 666 (1988), the Michigan Supreme Court held that while a child may have a cause of action for loss of parental society and companionship when the parent is negligently injured, the common law of this state does not recognize a parent's action for loss of a child's society and companionship when the child was negligently injured. In reaching this determination, the court held "that any decision to further extend a negligent tortfeasor's liability for consortium damages should be determined by the Legislature." *Sizemore*, 430 Mich. at 285. *See also Tunnicliffe v. Bay Cities Consolidated Railway Co.*, 102 Mich. 624, 629-31; 61 N.W. 11 (1894) (denying claim for loss of society, enjoyment and prospective services of unborn child); *McClain v. University of Michigan Regents*, 256 Mich. App. 492, 495; 665 N.W.2d 484 (2003) ("plaintiff may

14

not recover for loss of consortium for the loss of her unborn child"); *Jenks v. Brown*, 219 Mich. App. 415, 420; 557 N.W.2d 114 (1996) ("[a]n injury to a child does not give the child's parent a cognizable claim for loss of consortium or society and companionship").

Similarly, in *Malik v. William Beaumont Hosp.*, 168 Mich.App. 159, 165-67; 423 N.W.2d 920 (1988), the Michigan Court of Appeals refused to recognize a cause of action for loss of consortium where a minor sibling's brother or sister is negligently injured by another. In reaching this result, the court observed that "sibling relationships are not like parent-child relationships which include extensive financial, legal and emotional obligations" and that "the creation of a new cause of action for an indirect injury to an intangible relational interest will impose a significant additional economic burden on tortfeasors." *Malik*, 168 Mich. App. at 165-67.

For each of these reasons, defendants' motion will be granted with respect to plaintiffs' common law loss of consortium claims.

### B.     Plaintiffs' claims under MCL § 2922a

Plaintiffs have raised a statutory claim for damages pursuant to MCL § 600.2922a for the loss of Baby April Lynn and her society, companionship, love, affection, and comfort. MCL § 600.2922a provides as follows:

> (1) A person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus.
>
> (2) This section does not apply to any of the following:
>
>   (a) An act committed by the pregnant individual.
>
>   (b) A medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and with the pregnant individual's consent or the consent of an individual who

>> may lawfully provide consent on her behalf or without consent as necessitated by a medical emergency.
>
> (c) The lawful dispensation, administration, or prescription of medication.
>
> (3) This section does not prohibit a civil action under any other applicable law.
>
> (4) As used in this section, "physician or other licensed health professional" means a person licensed under article 15 of the public health code, 1978 PA 368, MCL 333.16101 to 333.18838.

The parties and this court have identified only one Michigan appellate decision which cites this statute, *People v. Kurr*, 253 Mich. App. 317; 654 N.W.2d 651 (2002). In *Kurr*, a criminal case, the court held that the doctrine of "defense of another" extended to the protection of a nonviable fetus from an assault against the mother. *Kurr*, 253 Mich. App. at 323. In this decision, the court briefly referred to § 600.2922a in a footnote, which observed that "the Legislature also passed civil protections for fetuses and embryos." *Id.* at 323 n. 5. This brief *dicta* does not address the issue raised in this case, i.e., whether Baby April Lynn's parents and siblings can claim damages pursuant to § 600.2922a. Under Michigan law, when a court interprets statutory language, the court's obligation is to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. *Veenstra v. Washtenaw Country Club*, 466 Mich. 155, 159-60; 645 N.W.2d 643 (2002). "When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case." *Id.* at 160. When the court construes a statute, "the words used by the Legislature must be given their common, ordinary meaning." *Id. citing* MCL 8.3a.

The court finds that MCL § 600.2922a is not ambiguous, that the statute speaks for itself and that the role of the court is to apply the statute's terms to the circumstances at hand. *See Veenstra*, 466 Mich. at 159-60. MCL § 600.2922a allows damages for "a wrongful or negligent act <u>against a pregnant individual</u>" which "results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus" MCL § 600.2922a(1) (emphasis added). In the present case, plaintiff Ginger Wood is the "pregnant individual." The "miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus" refers to the injury/miscarriage/stillbirth/death of Baby April Lynn. Defendants Palmer, Niehoff and Lawson are allegedly the "persons" who committed the wrongful or negligent act against Ginger Wood and as a result they would be the parties "liable for damages" to her. Accordingly, the court concludes that plaintiff Ginger Wood is authorized to collect damages under MCL § 2922a(1).[9]

However, the statutory contains no language extending the damage claim to anyone beyond the pregnant individual. The only other entity named in the statute is the embryo or fetus, in this case Baby April Lynn. As the court previously discussed, neither Baby April Lynn nor her estate are parties to this suit. Accordingly, defendants' motion to dismiss plaintiffs' claims for damages pursuant to MCL § 600.2922a will be denied with respect to plaintiff Ginger Wood and granted as to all other plaintiffs.

### IV. Plaintiffs' counter-motion for summary judgment regarding defendant Lawson

Finally, in their counter-motion for summary judgment, plaintiffs contend that

---

[9] In reaching this conclusion, it is unnecessary to address the exact nature of the "damages" available to Ginger K. Wood under the statute.

defendant Lawson "is in essence strictly liable under Michigan law for all injuries caused by the negligent operation of the car" because she "failed to purchase insurance on the car she owned with her son [co-defendant] Ryan Palmer." Docket no. 117 at 25-26. Plaintiffs' cite *Smith v. Sutherland*, 93 Mich. App. 24, 31; 285 N.W.2d 784 (1979), in which the court stated that "[a]n individual who has failed to obtain 'security' as required by MCL 500.3101; MSA 24.13101 is not entitled to the protections of [§] 3135 and as to that individual, traditional tort liability is retained." Plaintiffs also make the bald assertion that defendant Lawson has no standing to raise a motion for summary judgment. *Id.* at 26. Plaintiffs have raised some rather complex issues regarding owner liability under the no-fault act, but have provided the court with nothing more than conclusory assertions to support their position. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, plaintiffs' counter-motion for summary judgment as to defendant Lawson will be denied.

### V.  Conclusion

For the reasons set forth above,

Defendants' motion for summary judgment with respect to plaintiff Robert Wood (docket no. 91) will be **DENIED** as to Robert Wood's claim that he suffered a permanent serious disfigurement and **GRANTED** in all other respects.

Defendants' motion for summary judgment with respect to plaintiff Joseph Wood (docket no. 93) will be **GRANTED**.

Defendants' motion for summary judgment with respect to plaintiff Ellen Wood (docket no. 95) will be **GRANTED**.

Defendants' motion to dismiss certain damage claims related to "Baby April Lynn" (docket no. 97) will be **DENIED** with respect to damage claims asserted by plaintiff Ginger Wood pursuant to MCL § 600.2922a and **GRANTED** in all other respects.

Plaintiffs' counter-motion for summary judgment (docket no. 117) will be **GRANTED** with respect to Plaintiff Robert Wood's claim that he has suffered a permanent serious disfigurement within the meaning of MCL § 500.3135(1) and (2)(a)(i), and **DENIED** in all other respects.

An order consistent with this opinion shall be issued forthwith.

Dated:  October 7, 2005                             /s/ Hugh W. Brenneman, Jr.
                                                    Hugh W. Brenneman, Jr.
                                                    United States Magistrate Judge